USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____
DATE FILED: 11/6/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

LEANDRO SOUZA, *et al.*,

Plaintiffs,

-v-

65 ST. MARKS BISTRO d/b/a JULES BISTRO, *et ano.*,

Defendants.

------------------------------------------------------------X

**MEMORANDUM ORDER**

15-CV-327 (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

Wage-and-hour cases brought under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") are proliferating in the Southern District of New York. In 2003, 94 such cases were filed in this District. A little more than a decade later, in 2014, 862 wage-and-hour cases were commenced (and the projected number of such cases in 2015 is 972).[1] Given the increasing number of these cases and the many issues raised in their resolution that are subject to recurrence, this decision first reviews the current state of the law with respect to the approval of wage-and-hour settlements, and then considers the specific application made by the parties in this case to approve their proposed settlement agreement in that light.

**<u>Approval of Wage-and-Hour Settlements Before *Cheeks*</u>**

Up until August of this year, when the Second Circuit issued its decision in *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015), if a wage-and-hour case was settled at a conference before me upon referral from a district judge, the parties would often agree to place

---

1 These statistics have been provided by the Clerk of Court for the Southern District of New York. *See also* Christine Simmons, *Wage-and-Hour Lawsuits Surge in New York Federal Courts*, New York Law Journal, April 30, 2013, at 1 (discussing sharp rise in FLSA cases from 94 in 2003 to 682 in 2012).

the material terms of their settlement on the record (in order to ensure there was a binding agreement), consent to my jurisdiction under 28 U.S.C. § 636(c), and then request that I issue an order of dismissal. These terms would often include a requirement that the parties keep their settlement confidential (and any transcript of the proceeding would be filed under seal), and that plaintiff provide a general release in order to make certain that the parties would not have to incur the cost of any future litigation between them. Alternatively, the parties would simply submit a stipulation of dismissal for the court's signature once they had finalized their written agreement.

In my experience, both the plaintiffs' bar and the employers' bar expected that the terms of these settlements could be kept confidential. Employers wanted confidentiality because of their fear that copycat suits would otherwise result, and employees were willing to acquiesce if the settlement terms were otherwise acceptable. I understood that as a practical matter the only way many of these cases would be settled was along these lines, and because both sides were represented by competent counsel who had engaged in arms-length negotiations that I had overseen, I did not believe that plaintiffs were in some way being taken advantage of in a manner that would run counter to the protections intended for them by the wage-and-hour laws. Often lurking in the background of these negotiations was the fact that, in many of these cases, the settlements were agreed to as a result of the employee's apprehension that the employer would be unable to pay a large judgment, and it made sense to allow the parties to resolve their case in such circumstances.[2]

---

[2] Courts have often found that concerns over collectability arising from a defendant's financial difficulties militate in favor of finding a wage-and-hour settlement to be fair and reasonable. *See, e.g., Goett v. VI Jets Int'l, Inc.*, No. 14-CV-8256 (MHD), 2015 WL 3616961, at *2 (S.D.N.Y. Apr. 22, 2015) (finding that "defendants' financial condition rais[ing] the specter

On some occasions, the parties would choose to submit a settlement agreement for court approval. It was an open question in this Circuit until *Cheeks* as to whether judicial approval of an individual wage-and-hour settlement (as opposed to a collective or class action settlement, which always requires judicial approval) was legally required. *See, e.g., Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688 (JLC), 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (citing cases). If the parties submitted a settlement agreement for court review and approval, I (like many other judges in this District) concluded that such review would have to be conducted as a matter of public record and that any request for confidentiality of the settlement terms (which was almost always sought by the employer with acquiescence from the employee) would be rejected. *Id.* at *2, *2 n.4.[3]

**<u>The *Cheeks* Decision</u>**

In *Cheeks*, the Second Circuit held that stipulated dismissals settling FLSA claims with prejudice under Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure required the approval of the district court (or the U.S. Department of Labor ("DOL")) in order to take effect. 796 F.3d at 206. *Cheeks* came to the Circuit in an unusual posture: both plaintiff Dorian Cheeks and defendants Freeport Pancake House and W.P.S. Industries (where Cheeks had worked as a

---

of problems in enforcing any favorable judgment" supported settlement approval); *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("Case law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable.") (citations omitted).

3 As noted in *Martinez*, 2013 WL 4427917 at *2 (citing cases), there is a significant body of case law that stands for the proposition that a wage-and-hour settlement brought under the FLSA and submitted for judicial review may not include a confidentiality provision unless the parties can establish that there are reasons, specific to the case, sufficient to overcome the common law right of access to judicial documents. I am not aware of any decisions in this Circuit, either before or after *Cheeks*, which have permitted a confidential settlement (*i.e.*, sealed and not available on the docket) following judicial review in an FLSA case.

restaurant server and manager over the course of several years) sought appellate review of the district court's denial of their private settlement with an accompanying stipulation of dismissal. The district court had instead insisted the parties file a copy of their settlement agreement on the public docket, and justify why the proposed settlement reflected a fair and reasonable compromise of the disputed issues. *Id.* at 200-01. Rather than disclose the terms of their settlement, the parties sought a stay of further proceedings and certification of the question as to whether FLSA actions are excepted from Rule 41's general rule that parties may stipulate to the dismissal of an action without the involvement of the court. *Id.* The district court thereafter stayed the case and certified the question for interlocutory appeal. *Id.* at 201. The Circuit then granted the motion to certify and, as both parties advocated in favor of reversal, solicited the views of the DOL, which advocated in favor of public rather than private settlements of FLSA cases. *Id.*

After canvassing case law that discussed whether a private FLSA settlement was enforceable, the Circuit homed in on the precise question before it: whether parties "can enter into a private stipulated dismissal of FLSA claims with prejudice, without the involvement of the district court or DOL, that may later be enforceable." *Id.* at 204. It then observed that the trend among district courts in the Circuit was to subject FLSA settlements to judicial scrutiny, and concluded that these cases, "read in light of the unique policy considerations underlying the FLSA," required judicial or DOL approval. *Id.* at 206.

It is important to note what *Cheeks* decided and what it did not. The Circuit was presented only with the issue of whether a party may settle FLSA claims with prejudice, without court approval or DOL supervision, under Rule 41(a)(1)(A)(ii). It explicitly left open whether parties may settle FLSA cases without court approval or DOL supervision by entering into a

Rule 41(a) stipulation *without* prejudice. *Id.* at 201, n.2. It also did not address whether a fairness hearing of some kind needed to be held before the approval of a wage-and-hour settlement, and if so, the scope of such a hearing.

In addition, it did not decide whether all FLSA settlement agreements are foreclosed from including confidentiality provisions, general release language, or an allocation of attorneys' fees beyond a certain percentage. However, given its *dicta*, the Circuit's decision in *Cheeks* calls into question the validity of FLSA settlements that contain such provisions. Specifically, at the end of its opinion, the Court examined "the basis on which district courts recently rejected several proposed FLSA settlements [to] highlight[] the potential for abuse in such settlements, and [to] underscore[] why judicial approval in the FLSA setting is necessary." *Id.* at 206. To this end, the Circuit cited *Lopez v. Nights of Cabiria LLC*, No. 14-CV-1274 (LAK), 2015 WL 1455689 (S.D.N.Y. Mar. 30, 2015), in which the proposed settlement agreement had included a "battery of highly restrictive confidentiality provisions," "an overbroad release that would 'waive practically any possible claim against the defendants,'" and an attorneys' fees provision that set the fee at more than 40 percent without adequate documentation, and *Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635 (WHP), 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014), in which a proposed FLSA settlement had, *inter alia*, "contained a pledge by plaintiff's attorney not to 'represent any person bringing similar claims against Defendants.'" *Id.*[4]

---

[4] Given this *dicta*, one commentator has observed that *Cheeks* is "a problematic decision for employers as it will make it harder to resolve FLSA claims," and "[b]ecause courts will scrutinize FLSA settlement agreements before they will dismiss an FLSA case, defendant-employers will find it difficult to include confidentiality and other provisions in an agreement that are normally contained in settlement agreements." Glenn Grindlinger, *Second Circuit Requires Court Approval of all FLSA Settlements*, New York Law Journal, August 19, 2015, at 3.

While the Circuit stated that it was "mindful" of the concerns that the vast majority of FLSA cases are simply "too small," and the employer's finances "too marginal" for proceeding with litigation to make financial sense if a proposed settlement is rejected, it observed that "the FLSA is a uniquely protective statute," and any burdens "must be balanced against the FLSA's primary remedial purpose: to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Id.* at 205-07.

**Approval of Wage-and-Hour Settlements After *Cheeks***

Since *Cheeks* was decided, courts have taken a number of approaches to the approval of wage-and-hour settlements. For example, many judges in this District now require the parties (to the extent they are seeking to dismiss the action with prejudice) to file a joint letter-motion requesting approval of the settlement agreement (or alternatively provide documentation of DOL approval) on the public docket and explaining why the proposed settlement is fair and reasonable. Once such letter-motions are filed, the court then evaluates the settlement, and assuming it concludes it is fair and reasonable, approves the settlement in a docketed order without holding a formal hearing. *See*, *e.g*, *Reyes v. Magic Touch Constr. Corp.*, 14-CV-3759 (JPO) (Order dated October 7, 2015) (Dkt. No. 41); *Ramirez v. Pio Pio NYC, Inc.*, 14-CV-9445 (ER) (Order dated October 13, 2015) (Dkt. No. 85).

In the handful of post-*Cheeks* decisions from this District, courts have declined to approve proposed wage-and-hour settlements for a number of reasons. For example, in *Thallapaka v. Sheridan Hotel Assoc. LLC*, No. 15-CV-1321 (WHP), 2015 WL 5148867, at *1 (S.D.N.Y. Aug. 17, 2015), the court rejected the confidentiality provisions and the general release that had been included in the agreement. It also rejected the proposed attorneys' fee award as insufficiently supported by the record presented to the court. *Id.* at *2. In *Run Guo*

*Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13-CV-6667 (PAE), 2015 WL 5122530 (S.D.N.Y. Aug. 31, 2015), the court approved the settlement but only after further submissions on attorneys' fees had been made as well as a revised agreement without a confidentiality provision and an explanation of the bona fides of the dispute. *See also Beckert v. Rubinov*, No. 15-CV-1951 (PAE), 2015 WL 6503832 (S.D.N.Y. Oct. 27, 2015) (same).

**The Application for Court Approval in this Case**

With this background in mind, the Court turns to the pending application. Plaintiffs Leandro Souza, Zsuza Rozgonyi, Esteban Hernandez, Eloy Vergara, Efrain Sanchez, Jose Munoz, Anastasia Doroshenko, Krista Sullivan, and Jose Baezo ("Plaintiffs") filed this action earlier this year under the FLSA and NYLL against defendants 65 St. Marks Bistro, Inc. d/b/a Jules Bistro and Georges Forgeois ("Defendants") to recover unpaid minimum wages, unpaid overtime wages, and misappropriated tips, spread of hours pay under NYLL, liquidated damages, interest, and attorneys' fees and costs. Under *Cheeks*, the parties seek judicial approval of their negotiated settlement agreement (Dkt. No. 32-1) ("proposed agreement") following a settlement conference with the Court on September 10, 2015, and have submitted a joint letter-motion along with the proposed settlement seeking the Court's approval.[5]

I note as a threshold matter that courts generally recognize a "strong presumption in favor of finding a settlement fair," as they are "not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca*, 948 F. Supp. 2d at 365 (quotation omitted). Having conducted a lengthy settlement conference, the Court is familiar with the facts and circumstances of this case, including the bona fides of the dispute. I find the settlement,

[5] Following the settlement conference, the parties consented to my jurisdiction for all purposes under 28 U.S.C. § 636(c). *See* Docket No. 31.

except as is discussed below, to be fair and reasonable for the reasons set forth in the parties' letter-motion in support of the proposed agreement, Letter to the Court dated October 9, 2015, at 3 (Dkt. No. 32), and after the Court's independent review of the various factors to be considered in evaluating FLSA settlements. *See, e.g., Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012) (citing cases).

**Confidentiality Provisions**

However, the proposed agreement includes confidentiality provisions that the Court is constrained to reject. As many courts have observed, both before and after *Cheeks* was decided, "[c]onfidentiality provisions in FLSA settlements are contrary to public policy." *Guerra-Alonso v. West 54 Deli. Corp.*, No. 14-CV-7247 (WHP), 2015 WL 3777403, at *1 (S.D.N.Y. May 22, 2015) (citation omitted); *Thallapaka,* 2015 WL 5148867, at *1 ("overwhelming majority of courts reject the proposition that FLSA settlements can be confidential"). Such provisions, and similar ones that impose an obligation on a settling plaintiff to refrain from discussing any aspect of the case or the settlement "come into conflict with Congress' intent . . . both to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace," which consequently requires a court to consider "both the rights of the settling employee and the public at large" in approving any settlement. *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592 (LAK), 2015 WL 129723, at *2-3 (S.D.N.Y. Jan. 9, 2015) (internal quotation omitted); *see also* Elizabeth Wilkins, *Silent Workers, Disappearing Rights: Confidential Settlements and the Fair Labor Standards Act*, 34 Berkeley J. Emp. & Lab. L. 109, 111-12 (2013) (collecting cases that have barred confidentiality provisions in FLSA settlements and contending that "the rights of the general public and of similarly situated workers to know when

employers have violated the FLSA outweigh private litigants' interests in keeping a settlement confidential").

While the parties have filed their proposed agreement on the public docket,[6] it requires Plaintiffs to keep "the existence and terms of this Settlement Agreement confidential, and they shall not disclose them to anyone except to their immediate family members, financial advisors and attorneys ("Plaintiffs' Confidants"), provided Plaintiffs' Confidants agree to abide by [these] terms." Proposed Agreement, ¶8A. If Plaintiffs are asked about the status of the lawsuit, they are permitted only to respond that "[t]he Parties' dispute has been amicably resolved." *Id.*, ¶8C. Moreover, in ¶8B of the proposed agreement, Plaintiffs also agree not to provide assistance to any third party "with respect to any litigation, arbitration and/or civil action in which the Defendants could be implicated or discussed in any way, unless pursuant to subpoena or other compulsory legal process." This provision also attempts to curtail Plaintiffs' ability to discuss their settlement with others if they choose to do so. For the reasons set forth in *Camacho* and *Nights of Cabiria*, the Court is of the view that it would be the very rare case, if any, where confidentiality terms in a settlement agreement would be appropriate in resolving a wage-and-

---

[6] Some courts allowed for confidentiality provisions even after the settlement was publicly filed, *see, e.g., Chapman-Green v. Icahn House West IIC*, No. 11-CV-1190 (MHD), 2013 WL 474352, at *2 (S.D.N.Y. Jan. 24, 2013) (confidentiality provision "offers the employer some substantial protection against the potential for more lawsuits by current and former employees, and this mitigates any perceived harm from the required public filing of the document"), but such decisions have been called into question by *Cheeks*. Moreover, as the Court observed in *Camacho*, "[p]ractically speaking, . . . the public filing of the settlement in this case, *standing alone*, is unlikely to benefit low-wage workers . . . Pragmatically, the best way for a worker to learn about his or her employment rights is directly or indirectly from a co-worker or an outside organization." 2015 WL 129723, at *2 (emphasis added).

hour lawsuit given the policy concerns underlying the FLSA. There is nothing before the Court in this case to justify confidentiality.[7]

**General Release**

In addition, I note that the proposed agreement includes a general release similar to the one that several courts have rejected as too sweeping to be fair. *See, e,g, Nights of Cabiria*, 2015 WL 1455689, at *6-7 ("[c]ourts typically reject such broad releases."); *Guerra-Alonso*, 2015 WL 3777403, at *2 ("an employer is not entitled to use an FLSA claim . . . to leverage a release from liability unconnected to the FLSA") (citation omitted); *Flood v. Carlson Restaurants, Inc.*, No. 14-CV-2740 (AT), 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (finding general release too broad); *Goett*, 2015 WL 3616961, at *3 (approving settlement, but noting that settlement does not include general release). Specifically, the release language in the proposed agreement purports to release Defendants from "all actions, causes of action, suits, debts . . . which

---

7 While the notion that "confidentiality clauses and non-disclosure agreements encourage settlements by insulating defendants from the possibility of copycat litigation," is understandable, as the court in *Camacho* noted, "the congressional purposes underlying the FLSA change the calculus." *Camacho*, 2015 WL 129723 at *3. It is "difficult to imagine a scenario in which the parties' interest in non-disclosure trumps these congressional purposes." *Id.* Moreover, even if the employee were to agree to keep a settlement confidential, the rules regarding what her lawyer may do are less clear and any attempt to entirely silence the lawyer or restrict her representation of other employees might well run afoul of the ethical rules. *See* ABA Model Rules of Ethical Conduct R. 5.6(b) ("A lawyer shall not participate in offering or making . . . an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy."); *Tradewinds Airlines, Inc. v. Soros,* No. 08-CV-5901 (JFK), 2009 WL 1321695, at *9 (S.D.N.Y. May 12, 2009) (court declined "to interpret a standard confidentiality provision [that extended to plaintiff's counsel] as an implied restriction on counsel's ability to represent other clients, especially as such a restrictive covenant would itself violate ethical rules"); *cf.* ABA Comm. On Ethics & Prof'l Responsibility, Formal Op. 00-417 (April 7, 2000) ("Settlement Terms Limiting A Lawyer's Use of Information") ("it generally is accepted that offering or agreeing to a bar on the lawyer's disclosure of particular information is not a violation of the Rule 5.6(b) proscription. For example, Rule 5.6(b) does not proscribe a lawyer from agreeing *not to reveal* information about the facts of the particular matter or the terms of its settlement.").

[Plaintiffs] had, now have or hereafter can, shall or may have against Defendants, arising out of, by reason of, or relating in any way whatsoever to any matter, cause or thing from the beginning of the world through the date this Agreement is executed. . . ." Proposed Agreement, ¶5.

Unlike the courts that have rejected similar general release language in FLSA settlements, I am inclined to allow for a general release of the kind proposed here, at least in this case, with certain modifications discussed below. In my experience, parties come to a settlement conference in a wage-and-hour case hoping to achieve a resolution of all claims, including any other claims that they may have against each other (whether pled or unpled in the complaint or in any counterclaims) so that they do not have to litigate against each other in the future. A general release of the kind proposed in this case, with former employees who have no ongoing relationship with the employer, makes sense in order to bring complete closure. At settlement conferences (including the one in this case), counsel for both employees and employers stress the importance of these release terms. Indeed, in some cases an employee has identified other (previously unpled) claims and will accordingly obtain a higher settlement as a result of agreeing to a general release. Accordingly, the Court is willing to approve the release terms of the settlement in this case, with the modification that the release be mutual in all respects. A mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes. It is just as necessary for employees to obtain a release from the employer in these circumstances, otherwise they could still face the threat of litigation. This result is consistent with the goals of a fair and just settlement.[8]

---

[8] A mutual release will also ensure that an employer is not simply leveraging "a release from liability unconnected to the FLSA," *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350-

The Court has not found other decisions upholding such general release language in an FLSA case. However, this does not mean FLSA settlements that include such general release language are never approved.[9] Nonetheless, the Court is mindful that the Circuit in its *dicta* in *Cheeks*, in citing to *Nights of Cabiria*, appeared to disfavor such release language. Therefore, the Court will review the analysis in *Nights of Cabiria*, especially as it is frequently cited when FLSA general release language in a settlement agreement is rejected.

In *Nights of Cabiria*, the court began its analysis by noting: "Courts typically reject such broad releases. In this circuit, for example, class action releases 'may include claims not presented and even those which could not have been presented,' but only when 'the released conduct arises out of the identical factual predicate as the settled conduct.'" 2015 WL 1455689, at *6 (citing *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005)). Pursuant to this "identical factual predicate" doctrine, a release is valid only insofar as it precludes future claims that arise from the same facts at issue in the class action (its goal being to prevent the parties from litigating the same issues again under a different legal theory). Accordingly, the court in *Nights of Cabiria* transplanted this doctrine to the FLSA context to argue that FLSA releases should be limited to wage-and-hour claims, rather than to all claims. *See also Garcia v. Jambox, Inc.*, No. 14-CV-3504 (MHD), 2015 WL 2359502, at *4 (S.D.N.Y. Apr. 27, 2015) ("Appropriate guidance is found in caselaw involving class settlements, which

---

52 (M.D. Fla. 2010), but that any claim that the employer might have against the plaintiff (such as theft or destruction of property, in the case of a restaurant worker) would also be released.

[9] In fact, in the previously-cited *Reyes* and *Ramirez* cases, the court approved settlements that included general releases of claims against the defendants. See *Reyes* Order, Dkt. No. 40-1 (at ECF page 3 of 9); *Ramirez* Order, Dkt. No. 84-1 (at ECF page 4 of 23).

also require judicial assessment of fairness . . . In that context, the Second Circuit, in harmony with other circuits, has held that although 'plaintiffs . . . may release claims that were or could have been pled in exchange for settlement relief[,][p]laintiffs' authority to release claims is limited by the identical factual predicate . . . doctrine.") (quoting *Walmart*, 396 F.3d at 106).

The court in *Nights of Cabiria* reasoned that in the class action context settlements are only fair if they release claims that are related to the facts at issue in the current case. Accordingly, it concluded that an FLSA settlement is only fair if its release is similarly limited. However, a class action settlement is different from an FLSA (non-class) settlement. In the FLSA context, the settlement only binds the parties, which is not true in the class context. In an FLSA case, the individual employees are much more likely to know what other potential claims they have against the employer and value them appropriately. The insulating effect of a general release in the class action context is much broader. For example, consider a hypothetical securities class action. Shareholders bring suit against a pharmaceutical company for hiding the negative results of a drug trial. The suit settles and there is a mutual general release between the company and its shareholders. This settlement means that no shareholder could bring a claim arising from actions that predate the settlement. Presumably a vast majority of the employees own stock in the company, thus foreclosing any employment suit against the company. Similarly, any member of the public at large who owns one share of company stock is foreclosed from bringing any type of suit against the company – a tort from someone negatively affected by a company-manufactured drug, or someone who got into a car accident with a company delivery truck, etc. It would be impossible to negotiate a class action settlement that takes into account every class member's other potential claims (especially since the class members are often not

involved in the litigation). That is why the identical factual predicate doctrine is necessary in the class action context.

By contrast, in the FLSA context, the settlement only binds the parties to the suit and the employee should know the other claims she potentially has against her employer. She should then be able to properly value those additional claims. In short, as compared to the class action context, there is a much smaller likelihood that other claims will be unfairly extinguished in an FLSA settlement. This is highlighted by the fact that the court can inquire of the plaintiff whether she is aware of any other claims she has against the employer, and whether she understands that she is forfeiting any claims that are currently unknown to her as part of the settlement approval process. If the employee can think of no other claims, then it would be an anomalous result to say that a general release is unfair given that the agreement to one amounts to zero cost to that plaintiff as there is no other claim that could be brought. In fact, the court would be refusing the settlement on the ground that it is unfair to the plaintiff, even though the plaintiff and her lawyer can think of no set of facts under which the settlement would be unfair. If a plaintiff says that there are other claims she envisions (for example, a slip and fall in the kitchen in a case brought by a restaurant worker against the restaurant), then the court could inquire as to whether the settlement value properly accounts for this claim. If it is not properly accounted for, then the settlement could be rejected or alternatively that claim could be carved out.

Lastly, the court in *Nights of Cabiria* observed that such a broad release "confers an uncompensated, unevaluated, and unfair benefit on the employer." 2015 WL 1455689 at *7. If an FLSA plaintiff is represented by counsel, it is hard to understand how a general release would confer an unevaluated and uncompensated benefit to the employer if, to justify the settlement, a

lawyer has to represent to the court that the lawyer has explored other potential claims with the employee and the employee, with counsel's aid, can identify no additional basis to sue the employer and also acknowledges that she is forfeiting any claims currently unknown to her. At this point, the issue is certainly evaluated and while it is uncompensated, it is only because there is nothing to compensate.

**Conclusion**

The Court realizes that the proposed agreement specifically states that "Defendants would not have entered into this Agreement absent [the confidentiality provisions]." Proposed Agreement, ¶8C. But the Court does not believe, especially post-*Cheeks* where judicial approval of "with prejudice" dismissals is now required as a matter of law, that it can approve a settlement agreement with confidentiality provisions of the kind included in the proposed agreement. Thus, the Court is constrained to deny approval of the settlement agreement as submitted.

Accordingly, the parties are directed to notify the Court by November 16, 2015 of their intention to either (1) file a revised settlement agreement in accord with this Memorandum Order (*i.e.*, no confidentiality provisions and provision for mutual general releases (as well as acknowledgements from plaintiffs regarding any other claims they will be giving up as a result of the settlement), or (2) abandon settlement and proceed with the litigation.

**SO ORDERED.**

Dated: New York, New York
November 6, 2015

JAMES L. COTT
United States Magistrate Judge